UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
:
NASSAR FAMILY IRREVOCABLE TRUST, ALYSE :
C. NASSAR, ALBERT C. NASSAR, and :
WORLDWIDE MANAGEMENT CONSULTANTS, :
INC., :
:
        Plaintiffs, :     13 CV 13-cv-5680
:
     - v. - :
:
DOUGLAS H. SHULMAN, solely in his capacity as :
the COMMISSIONER OF THE UNITED STATES :
INTERNAL REVENUE SERVICE, and THE :
UNITED STATES OF AMERICA, :
:
        Defendants.     x
------------------------------------------------------------------

### MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR
### PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

**GLEASON & KOATZ, LLP**
122 East 42nd Street
New York, New York 10168
(212) 986-1544
Counsel for Plaintiffs
Rachel Black-Maier, of Counsel and on the Brief

1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ 3

PRELIMINARY STATEMENT ........................................................................................... 5

FACTS .................................................................................................................................. 6

ARGUMENT ...................................................................................................................... 10

    I. A Preliminary Injunction and Temporary Restraining
       Order  Are Necessary………………………………………………………………..10

        A. Plaintiffs Demonstrate Irreparable Harm…..…………………….......11

        B.  Albert C., Alyse and the Trust Demonstrate a Likelihood of
           Success: Nassar Is Not the *Alter Ego* of the Trust……………….14

        C. Worldwide Demonstrates a Likelihood of Success:
           Nassar Is Not the *Alter Ego* of Worldwide…………………..……17

        D.  The Balance of Hardship Favors Plaintiffs ……………….............18

    II. Taxpayer Did Not Receive Notice of Levy…………………………………..18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

<u>Cases:</u>

*Able v. United States,*
44 F.3d 128, 130 (2d Cir. 1995)……………………………………………………….11

*Babitt v. Vebeliunas (In re Vebeliunas),*
2002 U.S. Dist. LEXIS 1271 (S.D.N.Y. Jan. 28, 2002)…………………………………14

*In re Vebeliunas,*
332 F.3d 85, 91-92 (2d Cir. 2003)……………………………………………………..14

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
596 F.2d 70, 72 (2d Cir. 1979)………………………………………………………....11

*Kinderhill Select Bloodstock v. United States,*
835 F. Supp. 699, 700 (N.D.N.Y 1993)………………………………………………....13

*Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc.,*
878 F.2d 1259, 1263 (10th Cir.1989)…………………………………………………..17

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC,*
268 F.3d 58, 63 (2d Cir.2001)…………………………………………………………..14

*Metropolitan Taxicab Bd. of Trade v. City of New York,*
 615 F.3d 152 (2d Circ., 2010)………………………………………………………....13

*Morris v. Dept. of Taxation,*
603 N.Y.S.2d 807 (N.Y. 1993)…………………………………………………………...17

*Reuters Ltd. v. United Press Int'l, Inc.,*
903 F.2d 904, 907 (2d Cir. 1990)………………………………………..………………11

*Spencer Trask Software & Info. Servs. v. RPost Int'l, Ltd.,*
190 F.Supp.2d 577, 580 (S.D.N.Y.2002)………………………………………………10

*Tang Capital Partners, LP v. Cell Therapeutics, Inc.,*
 591 F.Supp.2d 666 (S.D.N.Y., 2008)…………… …………………….…..………..10

*Tom Doherty Ass., Inc. v. Saban Entertainment, Inc.,*
60 F.3d 27 (2d Circ., 1995)……………………………………………………………13

*United States v. Evseroff,*
270 Fed. Appx. 75, 77 (2d Cir. 2008)……………………………………………………14

*United States v. Evseroff,*
2012 U.S. Dist. LEXIS 60344-1
U.S. Tax Cas. (CCH) P50, 328,
109 A.F.T.R.2d (RIA) 1957 (E.D.N.Y., 2012)……………………………………………15

*United States v. Nat'l Bank of Commerce,*
472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed. 2d 565 (1985) ……..…………………………..14

*United States ex rel. Siewick v. Jamieson Science & Eng'g, Inc.,*
191 F.Supp.2d 17, 21 (D.D.C.2002)……………………………………………….…...17

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,*
339 F.3d 101 (2nd Circ., 2003)………………………………………………….…......13

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
933 F.2d 131 (2nd Circ., 1991)………………………………………………….…......14

<u>Statutes</u>:

26 U.S.C. § 7426…………………………………………………………………….5, 10

Federal Rule of Civil Procedure 65………………………………………...…………10

26 U.S.C. § 6331(a)……………………………………………………………….…...18

26 U.S.C. § 6330(b)……………………………………………………………………18

<u>Other Authorities</u>:

61 N.Y. Jur. Trusts § 295, at 491 (1968)……………………………………………….15

Plaintiffs the Nassar Family Irrevocable Trust (the "Trust"), Alyse C. Nassar ("Alyse"), Albert C. Nassar ("Albert C."), and Worldwide Management Consultants, Inc. ("Worldwide" together with the Trust, Alyse and Albert C., collectively, the "Plaintiffs") respectfully submit the within memorandum of law in support of their request for an order preliminarily restraining and enjoining the IRS from (i) seeking, directly or indirectly, to seize the ownership interests of Alyse and Albert C. in the Nassar Family Irrevocable Trust and their respective ownership interests in and to the condominium unit #53 located at 845 United Nations Plaza, New York, New York, (ii) retaining certain sums of money the IRS seized from certain bank accounts owned by the Trust held at J.P. Morgan Chase Bank, National Association, account numbers 979634227 and 2914696253, (iii) ordering that the IRS refund the sums of money seized from such accounts to the Trust, (iv) retaining those certain sums of money the IRS seized from certain bank accounts owned by Worldwide held at Bank of America, National Association, account number 003061420820 and by JP Morgan Chase Bank, National Association, account number 751753294, and (v) such other and further relief that the Court finds just and proper.

## PRELIMINARY STATEMENT

Plaintiffs bring suit pursuant to 26 U.S.C. § 7426, which states, in pertinent part, that "if a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property

5

and that such property was wrongfully levied upon may bring a civil action against the United States . . . ."

Plaintiffs Alyse C., Albert C., the Trust and Worldwide do not owe taxes to the United States. Albert D. Nassar ("Nassar") owes taxes to the United States.

The IRS levied upon bank accounts that are owned by the Trust and Worldwide. The Trust and Worldwide are independent and distinct legal entities, wholly separate from Nassar. Now, the IRS has targeted the Trust's apartment (the "Apartment") for seizure. It's located at 845 United Nations Plaza (Unit 53E) New York, New York.

Plaintiffs demonstrate entitlement to a preliminary injunction and a temporary restraining order. They show that they would be irreparably harmed in the absence of injunctive relief (they would be left homeless). They show that they would likely succeed on the merits (the Trust and Worldwide owe no taxes and are not the alter egos of the taxpayer, Nassar). And, they demonstrate that the balance of hardship favors plaintiffs (the Plaintiffs will be homeless, but the IRS will merely have to seek enforcement against the taxpayer – not the Trust or Worldwide).

The Court, therefore, may grant Plaintiffs the injunctive relief they seek. The IRS should be ordered to return the funds it unlawfully seized and enjoined from seizing the Apartment.

## STATEMENT OF FACTS

Nassar owes the IRS taxes based on his personal income. The IRS alleges he owes $2,636,490.45 as, allegedly, assessed for the tax years 2002 and 2009.

(Declaration of Rachel E. Black-Maier [the "Black-Maier Declaration"], Exhibits G, H). Nassar does not dispute that he is obligated to pay taxes he owes on the personal income he earned. (Declaration of Albert D. Nassar [the "Nassar Declaration"], ¶ 6)

Nassar has been unable to satisfy the taxes the IRS alleges he owes because Nassar fell gravely ill in 2008 when his intestine and colon ruptured. (Id. at ¶ 17). From 2008 to 2011 he underwent nine surgical operations to repair the damage caused by the rupture. (Id.). He was unable to work when his wounds became infected and he suffered from general weakness. (Id.).

Nassar has informed the IRS in writing and by telephone that he intends to pay the personal taxes he owes. (Id. at ¶ 6). In response, the IRS wrongfully levied upon the bank accounts of the Trust and Worldwide, which the IRS alleges are the *alter ego* of Nassar, and now seek to seize the Apartment. (Id. at ¶ 7, Black-Maier Declaration, ¶ 4). Neither the Trust nor Worldwide owe taxes to the United States of America.

Nassar is not the *alter ego* of the Trust or Worldwide.

The Trust was created in July 2001. Trusts and Estates attorney Steven A. Sciarretta created the Trust by preparing the Irrevocable Agreement of Trust which named Nassar the trustee and Nassar, Alyse and Albert C. the Trust's beneficiaries (the "Beneficiaries"). (Declaration of Steven A. Sciarretta [the "Sciarretta Declaration"], ¶4). Nassar's then wife, Niliana Nassar ("Niliana"), was the Trust's settlor. (Id.).

The Trust, by its terms, is irrevocable. It permits the trustee to make distributions to the Beneficiaries solely for the purposes of their health, maintenance, education, or support. (Black-Maier Declaration, Exhibit C). The Trust also permits the trustee to make a distribution annually to each beneficiary in the annual amounts for other reasons if the distribution is less than $5,000.00 or 5 percent of the Trust's assets, whichever is greater (as permitted by applicable law). (Id.).

The Trust purchased the Apartment for the health, maintenance and support of the Beneficiaries. (Nassar Declaration, ¶12).

The Apartment is the domicile of Nassar and the Beneficiaries. (Id. at ¶ 14). The Apartment was convenient to NYU's hospital where Nassar spent much of his recovery time. (Id. at ¶ 17). Nassar's son, plaintiff Albert C., attends university in New York State and resides in the Apartment. (Id. at ¶ 15). His daughter, plaintiff Alyse, attends graduate school in Florida and is domiciled in the Apartment when not in school. (Id.).

Worldwide pays the Apartment's utilities and condominium fees. (Id. at ¶ 16).

The IRS says it will seek to seize the Apartment to pay Nassar's personal income taxes. (Black-Maier Declaration, ¶ 4).

As trustee of the Trust, Nassar made distributions only to the Beneficiaries solely for their health, education, maintenance and support. (Nassar Declaration, ¶19).

As trustee and as permitted by the Trust, Nassar made distributions in 2012 and 2013 from the Trust to pay for his medical bills, food and other necessities. (Id. at ¶ 18).

The IRS wrongfully levied upon the bank account of plaintiff Worldwide. Worldwide was incorporated in the State of Florida on January 28, 2007. It is duly organized, validly existing and in good standing as a corporation under the laws of the State of Florida. (Black-Maier Declaration, Exhibit E).

Nassar is the sole shareholder of Worldwide and its secretary and president. (Black-Maier Declaration, Exhibit D). Worldwide was created to provide pharmaceutical consulting services. Its purpose was to connect pharmaceutical wholesalers with potential buyers. Since 2011 Worldwide changed its focus to provide consulting services to the finance and commodities industries.

Nassar is neither the *alter ego* of the Trust nor Worldwide. Each is a duly formed and validly existing entity, separate and independent from Nassar. Nassar has not used Worldwide or the Trust to commit a fraud or "other" wrong.

IRS inadequately served Nassar with the levies. On June 9, 2013 Nassar received correspondence from Bank of America, National Association ("Bank of America") that attached the IRS Notice of Levy dated June 3, 2013 (the "Bank of America Levy") to seize funds in Worldwide's bank account. (Black-Maier Declaration, Exhibit G).

A little less than a month later, on July 5, 2013 Nassar received correspondence from JP Morgan Chase Bank, National Association ("JP Morgan")

9

that attached the IRS Notice of Levy dated June 3, 2013 (the "JP Morgan Levy" and, together with the Bank of America Levy, collectively, the "Levies") from the IRS regarding the Trust's bank account. (Black-Maier Declaration, Exhibit H).

Nassar did not receive the Levies from the IRS until July 5, 2013. (Nassar Declaration, ¶ 27). By July 10, 2013, JP Morgan had already transferred $139,363.92 from the Trust's account to the IRS. (Id. at ¶ 28).

The IRS's actions are unlawful. The IRS failed to serve Nassar personally with the Levies until more than a month after they were issued. It should not have levied the Trust and Worldwide's bank accounts because the funds contained therein do not belong to Nassar, the tax payer.

## LEGAL ARGUMENT

### I. A Preliminary Injunction and Temporary Restraining Order Are Necessary

The Court is authorized by 26 U.S.C. § 7426, to grant relief from the Levies. Plaintiffs are entitled to a preliminary injunction and a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 and Internal Revenue Code (the "Code") section 7426(b)(1). The Code permits third parties to seek injunctive relief from IRS levies where it "… would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property…" Id. at (b)(a).

The standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical. *Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F.Supp.2d 666 (S.D.N.Y., 2008),

*Spencer Trask Software & Info. Servs. v. RPost Int'l, Ltd.,* 190 F.Supp.2d 577, 580 (S.D.N.Y.2002).

Plaintiffs meet each of the Second Circuit's requirements to obtain a preliminary injunction. Plaintiffs show plainly: (1) irreparable harm (loss of residential real estate), (2) likelihood of success on the merits (IRS has no right to seize non-taxpayer property to satisfy Nassar's debt), and (3) a balance of hardships tips decidedly in favor of the movant (Plaintiffs have lost money and will lose their home should the IRS seize it). *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979), *Able v. United States,* 44 F.3d 128, 130 (2d Cir. 1995) (citation omitted), *see Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990).

A. <u>Plaintiffs Demonstrate Irreparable Harm</u>

The IRS has threatened to seize the Apartment to satisfy taxes owed by Nassar – doing so, however, would irreparably harm the Trust and its Beneficiaries. The Trust purchased the Apartment for the purpose of the health, maintenance and support of the Beneficiaries. The Apartment is the primary domicile of Beneficiaries. If the IRS is permitted to seize the Apartment the Beneficiaries will be homeless. Seizure would strip unlawfully the Trust of its sole asset.

Likewise, if the IRS is permitted to retain the funds it unlawfully seized from the Trust's bank account, the Trust will be unable to pay for costs necessary for the health, education, maintenance and support of the Beneficiaries. Since his release from the hospital, Nassar made distributions to himself from the Trust's bank

account to pay his medical bills and basic necessities such as food and transportation. In the absence of immediate injunctive relief, Nassar will be unable to cause the Trust to provide for the health, maintenance, education and support requirements of the Beneficiaries. Plaintiffs, therefore, would be irreparably harmed in the absence of injunctive relief.

The Trust's corpus, its bank account and the Apartment, are unique assets. If the IRS executes its planned seizure of the Apartment and retains the Trust's funds, Plaintiffs will suffer more than mere monetary harm. The Apartment has been owned by the Trust since 1991. It has serves as the Beneficiaries domicile. The Irrevocable Trust Agreement consecrates the Trust's funds to provide for the maintenance, health, support and education of the Beneficiaries. If the IRS retains the funds and seizes the Apartment, the Beneficiaries will be unable to reside in the Apartment and unable to pay their medical bills, educational costs and basic maintenance and support costs, which will harm them irreparably.

Worldwide will suffer irreparable harm if the IRS is permitted to retain Worldwide's funds. Worldwide is a separate, distinct and independent entity from Nassar. It provides consulting services to the financial and commodities industries. If the IRS is permitted to retain its funds (claiming incorrectly they pay Nassar's taxes), Worldwide will not be able to pay its operating expenses and therefore be harmed irreparably by being unable to serve its customers. Worldwide pays for the Apartment's utilities and condominium fees. If the IRS retains Worldwide's funds and continues to freeze its bank accounts, Worldwide will be prevented from paying

the Apartment's costs. If Worldwide cannot pay the Apartment's utilities and maintenance, the Beneficiaries will lose their residence and domicile and will be irreparably harmed.

Plaintiffs demonstrate that without an injunction they will suffer more than mere monetary harm. *Kinderhill Select Bloodstock v. United States*, 835 F. Supp. 699, 700 (N.D.N.Y 1993) (irreparable harm found where IRS sought to sell race horses to satisfy taxpayer's debt because race horses were unique property which, once sold, would be forever lost to their owners), *Tom Doherty Ass., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Circ., 1995) (where book publisher failed to offer right of first refusal as to the Power Rangers book franchise to publisher Tom Doherty ("TOR"), as was contracted, the court issued a temporary injunction because in the absence of such "TOR will lose an opportunity to become a major publisher of children's books" and therefore be irreparably harmed), *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101 (2d Circ., 2003) (temporary injunction upheld where minority stake holder would suffer imminent, irreparable harm and where other stake holders in a beer distribution enterprise breached joint venture contract by failing to allow the exercise of minority rights)*, Metropolitan Taxicab Bd. of Trade v. City of New York,* 615 F.3d 152 (2nd Circ., 2010) (temporary injunction upheld enjoining the government and taxicab and limousine commission (TLC) from enforcing TLC regulations promoting purchase of hybrid taxicabs under the Energy Policy and Conservation Act (EPCA) finding that taxi cab operators would suffer irreparable harm).

B. Albert C., Alyse and the Trust Demonstrate a Likelihood of Success:
   <u>Nassar Is Not the *Alter Ego* of the Trust</u>

Under New York law[1], an entity is a taxpayer's *alter ego* only where (i) the taxpayer exercised complete domination and control over the entity, such that the entity has become a mere instrumentality of the taxpayer, (ii) and the taxpayer used such domination to commit a fraud or other wrong resulting in unjust loss or injury. See *United States v. Evseroff*, 270 Fed. Appx. 75, 77 (2d Cir. 2008) (citing *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003).

Neither of these two elements are present here.

In applying *alter ego* theory to trusts, District Courts in the Second Circuit have drawn an analogy between a taxpayer's control over a trust and the corporate context. *Babitt v. Vebeliunas (In re Vebeliunas)*, 2002 U.S. Dist. LEXIS 1271 (S.D.N.Y. Jan. 28, 2002)

In determining whether an entity or individual dominates a corporation, New York courts examine many factors including: the absence of the formalities and paraphernalia that are part and parcel of the corporate existence (i.e., issuance of stock, election of directors, keeping of corporate records and the like, inadequate capitalization), whether funds are put in and taken out of the corporation for personal rather than corporate purposes, and whether the corporation had property that was used by other of the corporations as if it were its own. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131 (2d Circ., 1991), *MAG*

---

[1] State law, not federal, controls the analysis of the taxpayer's alleged legal interest in the wrongfully levied entity. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed. 2d 565 (1985).

14

*Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

In *U.S. v. Everseroff*[2], the court analyzed these factors to determine whether a trust was the *alter ego* of the taxpayer. The court considered whether the trust's formalities were observed, whether it exercised its own discretion and made its own decisions as an entity, and whether it dealt with the taxpayer at arms-length or whether the taxpayer controlled the trust's property[3]. Id. at 48.

The Trust, by virtue of the Irrevocable Trust Agreement, is validly formed and legally existing. The Irrevocable Trust Agreement permits the Trust's trustee, Nassar, to make distributions only for the health, education, support and maintenance of the Beneficiaries. Nassar obeyed these formalities. He caused the Trust to purchase the Apartment for the purpose of providing support and maintenance to the Beneficiaries. Nassar made distributions from the Trust's bank account for the sole purpose of the Beneficiaries' health, education, maintenance and support. The Trust, therefore, obeyed requisite formalities to maintain and preserve its separate independence.

Nassar's duty was to act as the Beneficiaries' fiduciary, which he did properly. He owed a duty of loyalty to the Beneficiaries and the duty to manage the assets of the Trust for the benefit of the Beneficiaries, which he performed properly. 61 N.Y. Jur. Trusts § 295, at 491 (1968).  His position as trustee required Nassar to control the assets of the Trust for the benefit of the Beneficiaries. He did not

---

[2] 2012 U.S. Dist. LEXIS 60344-1 U.S. Tax Cas. (CCH) P50, 328; 109 A.F.T.R.2d (RIA) 1957 (E.D.N.Y., 2012).
[3] The Everseroff court found that the trust was the alter ego of the taxpayer. The taxpayer had not followed the trust's formalities and had created the trust after the IRS assessed the unpaid income tax.

exercise undue domination over the Trust, he simply performed his duties as trustee to guard the Trust's assets and make distributions to Beneficiaries as permitted by the Irrevocable Trust Agreement.

The Trust is separate and independent of Nassar; Nassar did not dominate the Trust so as to commit a wrong or fraud. The IRS has not once alleged heretofore that Nassar committed a wrong or fraud upon it. Nassar used his role as trustee to further the interests of the Beneficiaries in compliance with the Irrevocable Trust Agreement. The Trust was created in 2001, well before Nassar owed the IRS money. Thus, the Trust was not, *ab initio*, formed to defraud the IRS. As trustee, Nassar caused the Trust to make proper distributions to its Beneficiaries. He caused the Trust's assets to be deposited in a savings account and he caused the Trust to purchase the Apartment for the purpose of the Beneficiaries support and maintenance. None of these actions were taken in order to frustrate collection of Nassar's taxes.

Alyse, Albert C. and the Trust demonstrate a likelihood of success on the merits. Nassar is not the alter ego of the Trust. The Trust is separate and independent of Nassar. Nassar does not dominate and control the Trust, nor did he use the Trust to commit a wrong or fraud. A temporary restraining order and preliminary junction are required to prevent the IRS from wrongfully levying the Trust's bank account and seizing the Apartment.

C. Worldwide Demonstrates a Likelihood of Success: Nassar Is
   Not the Alter Ego of Worldwide

Worldwide is a corporation duly organized, validly existing and in good standing

under the laws of the State of Florida. Nassar is its sole shareholder.

Being the sole shareholder alone, however, does not mean that Nassar is Worldwide's *alter ego. Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1263 (10th Cir.1989) ("[t]he fact that Pioneer owns all the stock of Uravan, standing alone, is an insufficient basis to depart from the general rule that the corporation and its shareholder are to be treated as distinct legal persons"), *In re Hansen,* 341 B.R. 638, 643 (Bkrtcy.N.D.Ill. 2006) (where an individual sought to be held personally liable was president and majority shareholder of corporation is "not remotely enough" to pierce the corporate veil), *United States ex rel. Siewick v. Jamieson Science & Eng'g, Inc.,* 191 F.Supp.2d 17, 21 (D.D.C. 2002) ("[I]t has long been the clearly stated rule in this circuit that the existence of a sole and controlling shareholder does not alone justify invoking the alter ego doctrine."), *Morris v. Dept. of Taxation*, 603 N.Y.S.2d 807 (N.Y. 1993). Hence, Nassar's status as sole shareholder is inadequate to prove domination of Worldwide.

Worldwide has not abused the corporate form. *Au contraire*, it followed corporate formalities. Worldwide is in good standing with the Florida Secretary of State. Worldwide's purpose is to provide consulting services. It provided pharmaceutical consulting services, but now provides consulting services to the financial and commodities industries.  Worldwide is a legitimate business, it is separate and apart from Nassar. The IRS, therefore, should be ordered to return its funds.

D. <u>The Balance of Hardship Favors Plaintiffs</u>

The harm Plaintiffs will suffer should the IRS not be enjoined far outweighs the harm to the IRS resulting from mere delay in collecting taxes that may be owed by Nassar.

If the IRS is permitted to seize the Apartment and retain Plaintiffs' funds, Plaintiffs – who are not responsible for payment of Nassar's unpaid taxes – will suffer irreparably through loss of the Apartment and the funds to maintain it.

On the other hand, if the IRS is ordered to return Plaintiffs' funds and enjoined from seizing the Apartment, the IRS will suffer little to no harm. Nassar intends to pay the taxes he owes or reach a mutually satisfactory arrangement with the IRS.  The IRS will, eventually, collect the taxes Nassar owes. The IRS must not, however, collect those taxes from the Trust or Worldwide.

The balance of hardship favors Plaintiffs; great harm to the Plaintiffs will occur in the absence of injunctive relief. Little harm will the IRS suffer.

II. <u>Taxpayer Did Not Receive Notice of Levy</u>

Section 6331(a) of the Code authorizes Defendants to levy upon a taxpayer's property but only where it gives thirty-days' notice and demand for payment. This requirement is designed to permit opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals. Section 6330(b) of the Code grants a taxpayer who makes such a request the right to a fair hearing before an impartial Appeals officer.

The IRS failed to serve the required thirty-day notice upon Nassar. The IRS

first served the banks. It was the banks that notified Nassar of the Levies, not the IRS. He received the Levies from the IRS five days before the banks transferred Worldwide and the Trust's funds to the IRS. He had no opportunity to seek administrative relief or to oppose the Levies in any other fashion. Thus, any suggestion that Nassar should have exhausted administrative remedies before approaching this Court is misplaced. Moreover, Plaintiffs lacked standing to seek administrative relief from the Levies.

The IRS violated the Code and should therefore be required to return the funds to the Trust and Worldwide.

## CONCLUSION

For the foregoing reasons the Plaintiffs' request for a preliminary injunction and temporary restraining order should be granted.

Dated: New York, New York
    August 13, 2013                    Gleason & Koatz, LLP

                                               By: /s/ _Rachel E. Black-Maier_
                                                     Rachel E. Black-Maier

                                               122 East 42nd Street
                                               New York, New York 10168
                                               (212) 986-1544
                                               Attorneys for Plaintiffs